# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

CLIFFORD B. RUSSELL,      )
                                    )
                                    )
            Plaintiff,        )
                                    )
v.                               )     No.  05-CV-540-SAJ
                                    )
JO ANNE B. BARNHART,      )
Commissioner of Social Security    )
Administration,            )
                                    )
           Defendant.     )

## OPINION AND ORDER[1]

Pursuant to 42 U.S.C. § 405(g), Plaintiff appeals the decision of the Commissioner denying Social Security benefits.[2]  Plaintiff asserts that the Commissioner erred because the ALJ did not properly evaluate Plaintiff's credibility.  For the reasons discussed below, the Court affirms the Commissioner's decision.

## I. FACTUAL AND PROCEDURAL HISTORY

Plaintiff was born October 26, 1952.  [R. at 56].  Plaintiff completed the eleventh grade of high school.  [R. at 84].  Plaintiff noted that in January 2003 he completed armed security classes.  [R. at 84].

In a form completed for the Social Security Administration, Plaintiff noted that he was 5'8" tall and weighed 170 pounds.  [R. at 76, 87].  Plaintiff indicated that he was unable to

---

[1]   This Order is entered in accordance with 28 U.S.C. § 636(c) and pursuant to the parties' Consent to Proceed Before United States Magistrate Judge.

[2]   Administrative Law Judge Richard J. Kallsnick (hereafter "ALJ") concluded that Plaintiff was not disabled by decision dated April 25, 2005. [R. at 10 - 21].  Plaintiff appealed the decision by the ALJ to the Appeals Council. The Appeals Council declined Plaintiff's request for review on August 1, 2005.  [R. at 5].

work due to a spastic colon (partial removal), acid reflux, glaucoma, hernia, and bleeding ulcers.  [R. at 76].  Plaintiff noted that the beginning stages of his glaucoma limited his abilities, that the spastic colon limited his ability to lift, and that the medications he was taking impaired his ability to work.  [R. at 76].

Plaintiff was interviewed by a Social Security field officer on May 29, 2003.  Plaintiff was noted as having no trouble hearing, reading, understanding or seeing.  Plaintiff did have some difficulty with concentrating, talking, sitting, standing, and walking.  The field officer noted that Plaintiff "appeared to be in pain and uncomfortable.  stood [sic] up at times.  wife [sic] was the person that completed all forms and answered most of the questions."  [R. at 101].

Plaintiff competed a Disability Supplemental Interview Outline.  [R. at 103].  Plaintiff noted that he watched the news in the morning.  Plaintiff, on a daily basis, washes dishes and straightens his house.  Plaintiff cares for two young girls after school and takes care of the girls during the summer.  "I keep them all day.  This also brings in income and is easy on my body." [R. at 103].  Plaintiff wrote that he also enjoys reading about history and current events.  [R. at 103].  Plaintiff noted that he was no longer able to perform physical labor and that he was in constant pain.  [R. at 103].  Plaintiff wrote that he slept from five to six hours each night, and that sleeping thru the night was difficult due to his pain.  [R. at 103].  Plaintiff lives in a house with his wife and son.  [R. at 103].  Plaintiff indicated that he did not need assistance with personal grooming, and that his wife did the cooking at home.  [R. at 104].  Plaintiff noted that he read each day, and that he enjoyed listening to news for about three to four hours each day.  [R. at 105].  Plaintiff noted that his hobbies included

collecting art and working on cars although he did not engage in his hobbies on a daily basis.  [R. at 105].

Plaintiff socializes with friends and relatives at least one time each month for approximately two to three hours.  Plaintiff noted that he did not require assistance to visit friends because he is still able to walk.  [R. at 106].  Plaintiff indicated that he was unable to drive when he was on medication.  [R. at 106].  Plaintiff also noted that he was active in the Cherokee Nation, volunteering with kids doing softball, fishing, and playing Santa at Christmas.  [R. at 106].  Plaintiff wrote that "my social activities have increased because I am available to help with the kids."  [R. at 106].

In completing a pain questionnaire in June 2003, Plaintiff noted that he drank coffee and watched news in the morning.  Plaintiff also vacuumed, dusted, did the dishes, or "whatever it takes to clean up."  [R. at 116].  Plaintiff also wrote that he watched two little girls for about three hours in the afternoon while their mother worked, and that he read a lot.  [R. at 116].  Plaintiff noted that he did not do much else because he was unable to lift much.  [R. at 116].  Plaintiff indicated that he experienced pain in the right side of his abdomen, which felt like his ribs were bruised.  Plaintiff's back also had severe pain with the pain at times being so severe that his chest felt like it was tightening.  Plaintiff noted that he experienced the pain on a daily basis, since his surgeries in 2001.  [R. at 116].  Plaintiff noted that his pain sometimes stayed in one place but it started in his abdomen and moved to his ribs, chest, and lower back.  [R. at 116].  Plaintiff's medication list included Ibuprofen, Hydrocodone, Propoxyphene, and Dicyclomine.  [R. at 117].  Plaintiff noted his only side effects were drowsiness and not wanting to do much.  [R. at 117].

Plaintiff had colostomy surgery on April 25, 2001.  Plaintiff's colostomy was successful, and Plaintiff was to do no lifting or driving.  Plaintiff was told that he would have to have one or two more operations.  Plaintiff was discharged on May 4, 2001.  [R. at 269, 277].

A CT scan was done February 7, 2002, due to Plaintiff's complaints of severe abdominal pain.  A ventral hernia in the upper quadrant at the site of Plaintiff's prior colostomy was noted.  [R. at 295].  The examiner also noted chronic perisplenic fibrosis.  [R. at 295].  Plaintiff's CT scan of his pelvis was negative.  [R. at 296].  A CT scan of the abdomen indicated that Plaintiff's ventral hernia had been repaired with no recurrence.  [R. at 298].

Plaintiff has numerous doctor visits due to chronic back pain in September and October 2002.  [R. at 304 - 07].  Complaints of chronic back pain continued into 2004.  [R. at 325].

On October 16, 2003, Plaintiff noted that he had pain and some depression due to his illness.  [R. at 124].  Plaintiff noted that he had recently had an additional surgery for a hernia and had been given Lortab for his pain.  [R. at 126].

Plaintiff was examined by Ravinder R. Kurella, M.D. for the State of Oklahoma Disability Determination Division on August 28, 2003.  [R. at 136].  Plaintiff complained of pain in his lower abdomen, recurrent hernia's, back pain, glaucoma, difficulty standing for long periods of time, and a ten pound weight restriction due to surgery.  [R. at 136].  Plaintiff's gait was normal and Plaintiff was able to walk short distances with no difficulty.  [R. at 139].  Plaintiff had a full range of motion of all joints in his body.  [R. at 139 - 143].  Plaintiff's straight leg raising test was normal.  [R. at 139].

Plaintiff had surgery on July 15, 2003 for a recurrent ventral hernia.  [R. at 223].
Plaintiff tolerated the procedure well.  [R. at 223].  Plaintiff had an EGD with biopsies on
June 30, 2003 for Plaintiff's severe gastroesophageal reflux.  [R. at 228].

Plaintiff was examined by John Sutton, M.D., for the Social Security Administration
on December 3, 2004.  [R. at 244].  The examiner noted that Plaintiff claimed disability
based on a "recurring hernia."  [R. at 244].  Plaintiff reported a surgery in 2001 for
"collapsing intestines."  Plaintiff reportedly had a colostomy for about six months and later
had the procedure reversed.  According to Plaintiff, he returned to his job which involved
a lot of heavy lifting.  Plaintiff reported abdominal pain and had a ventral hernia repair with
mesh.  Plaintiff was off from work for about six weeks and had to have another hernia
repair.  Plaintiff stated that his doctors had restricted him to lifting 15 pounds.  [R. at 244].
Plaintiff also reported taking Lortab for his back pain.  Plaintiff smokes one-half to one pack
of cigarettes each day.  Plaintiff's medications included Aciphex, Zantac, Bentyl, and
Lortab. Plaintiff stated he believed he had glaucoma, but that it was not treated at the time.
[R. at 245].  Plaintiff stated that he did not drive because he was taking Lortab.  [R. at 245].
Plaintiff was able to do some housework and some yard work including raking leaves.
Plaintiff was 5'6 3/4" tall and weighed 184 ½ pounds.  [R. at 245].  Plaintiff's gait was
normal with a normal heel/toe walk.  Straight leg raising was negative.  Plaintiff got on and
off the examination table with no difficulty.  [R. at 246].  The doctor completed a medical
assessment form and concluded Plaintiff could occasionally lift and carry twenty pounds,
and frequently lift and carry ten pounds.  Plaintiff had no restriction with regard to function.
The doctor noted that Plaintiff stated his physicians had restricted him to lifting 15 pounds
due to potential recurrence of his hernia.  The examining doctor observed this as a

reasonable restriction, but noted that Plaintiff could physically lift more than 15 pounds.  [R. at 246].  Plaintiff's range-of-motion chart was completed as primarily no restrictions.  [R. at 248-49].  A Medical Source Statement of Ability to do Work-Related Activities (Physical) form was completed by the doctor.  Plaintiff was noted as being able to lift 20 pounds occasionally and 10 pounds frequently.  Standing, walking, sitting, pushing, and pulling were not affected.  [R. at 252-53].

Plaintiff testified at a hearing before the ALJ on April 5, 2005.  [R. at 328].  Plaintiff was 52 years old at the time of the hearing.  [R. at 332].  Plaintiff testified that he completed one year of college.  [R. at 332].

Plaintiff stated that he was unable to work because he experiences significant stomach pain due to his hernias and he has back pain.  [R. at 335].  According to Plaintiff, his pain is about a nine on a scale of from one to ten.  [R. at 336].  Plaintiff noted that he currently had a hernia which the doctors had located on an x-ray.  [R. at 336].  According to Plaintiff, the doctors never really gave Plaintiff a reason for his hernias recurrence.  [R. at 337].  Plaintiff noted that the doctors do not want to do surgery on his hernia unless it becomes worse because Plaintiff has a lot of scar tissue.  [R. at 337].

Plaintiff stated that he had to lean forward in his chair during the hearing because he was experiencing pain.  [R. at 338].  Plaintiff also testified that he has irritable bowel syndrome and acid reflux.  [R. at 339].  Plaintiff stated that his doctors told him not to lift anything over 15 pounds.  [R. at 339].  Plaintiff was also told to do as little bending as possible.  [R. at 340].

When asked what other problems prevent him from working, Plaintiff noted his headaches, and his glaucoma.  Plaintiff noted that he has pressure behind his eyes which

causes headaches.  [R. at 340].  Plaintiff stated that the headaches last for as long as two hours, and once in a while a headache can last for three days.  [R. at 340].  Plaintiff also stated that his peripheral vision was not good and that he saw spots when he wore reading glasses.  [R. at 341].

Plaintiff stated that he could stand for ten to fifteen minutes at one time before he would feel pain throughout his body.  [R. at 341].  Plaintiff believes he can sit for approximately 30 minutes before experiencing an increase in pain.  [R. at 341].  Plaintiff noted that he can usually walk around the block to get his mail, but that he must walk slowly.  [R. at 342].  Plaintiff believes his most comfortable position is when he sleeps.  Plaintiff testified that he sleeps on his stomach.  [R. at 342].  Plaintiff sleeps about five or six hours each night, and awakens about three or four times due to his pain.  Plaintiff also noted that it takes him 35 to 40 minutes to fall back asleep each time.  Plaintiff noted that he usually takes a nap in the afternoon after his second dose of Lortab, and that he sleeps for about one hour.  [R. at 343].

Plaintiff noted that he enjoys reading, but that concentrating on what he is reading is difficult, and he is sometimes required to reread passages.  [R. at 344].  Plaintiff noted that it previously took him 20 minutes to read the paper, but that he currently required two and one-half hours to read the paper.  [R. at 345].

According to Plaintiff he does not drive much, but he was forced to drive for a period of time while his wife was sick.  [R. at 345].  Plaintiff also stated that he cannot sit for very long so he is required to pull over to the side of the road.  [R. at 346].  Plaintiff also indicated that there was not much, at home, that he could do.  Plaintiff stated that he could not take out the trash, do the dishes, or the laundry.  [R. at 346].  Plaintiff indicated that he

had difficulty dressing, and no longer wore shoes with shoestrings.  [R. at 347].  Plaintiff

believes that the pain prevents him from leaving his house two or three times each week.

[R. at 348].

Plaintiff's wife testified that she and Plaintiff had been married for four years, but had

been together for eight years.  [R. at 351].  She noted that Plaintiff's first hernia surgery was

in April 2001 for a colostomy, and that that surgery was reversed in August 2001.  [R. at

351].  Plaintiff had a hernia surgery in February 2002 and a second hernia surgery in July

2003.  Plaintiff's wife testified that she believes he does not leave the house three to four

days each week.  Plaintiff's wife noted that Plaintiff described his limitations fairly well.  [R.

at 352].

## II. SOCIAL SECURITY LAW AND STANDARD OF REVIEW

The Commissioner has established a five-step process for the evaluation of social

security claims.  *See* 20 C.F.R. § 404.1520.  Disability under the Social Security Act is

defined as the

> inability to engage in any substantial gainful activity by reason
> of any medically determinable physical or mental impairment
> . . . .

42 U.S.C. § 423(d)(1)(A).  A claimant is disabled under the Social Security Act only if his

> physical or mental impairment or impairments are of such
> severity that he is not only unable to do his previous work but
> cannot, considering his age, education, and work experience,
> engage in any other kind of substantial gainful work in the
> national economy. . . .

42 U.S.C. § 423(d)(2)(A).[3/]

The Commissioner's disability determinations are reviewed to determine (1) if the correct legal principles have been followed, and (2) if the decision is supported by substantial evidence.  *See* 42 U.S.C. § 405(g); *Bernal v. Bowen*, 851 F.2d 297, 299 (10th Cir. 1988); *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988).

The Court, in determining whether the decision of the Commissioner is supported by substantial evidence, does not examine the issues *de novo*.  *Sisco v. United States Dept. of Health and Human Services*, 10 F.3d 739, 741 (10th Cir. 1993).  The Court will not reweigh the evidence or substitute its judgment for that of the Commissioner.  *Qualls v. Apfel*, 206 F.3d 1368 (10th Cir. 2000); *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994).  The Court will, however, meticulously examine the entire record to determine if the Commissioner's determination is rational.  *Williams*, 844 F.2d at 750; *Holloway v. Heckler*, 607 F. Supp. 71, 72 (D. Kan. 1985).

---

[3/]    Step One requires the claimant to establish that he is not engaged in substantial gainful activity (as defined at 20 C.F.R. §§ 404.1510 and 404.1572).  Step Two requires that the claimant demonstrate that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities.  *See* 20 C.F.R. § 1521.  If claimant is engaged in substantial gainful activity (Step One) or if claimant's impairment is not medically severe (Step Two), disability benefits are denied.  At Step Three, claimant's impairment is compared with those impairments listed at 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the "Listings").  If a claimant's impairment is equal or medically equivalent to an impairment in the Listings, claimant is presumed disabled.  If a Listing is not met, the evaluation proceeds to Step Four, where the claimant must establish that his impairment or the combination of impairments prevents him from performing his past relevant work.  A claimant is not disabled if the claimant can perform his past work.  If a claimant is unable to perform his previous work, the Commissioner has the burden of proof (Step Five) to establish that the claimant, in light of his age, education, and work history, has the residual functional capacity ("RFC") to perform an alternative work activity in the national economy.  If a claimant has the RFC to perform an alternate work activity, disability benefits are denied.  *See* <u>Bowen v. Yuckert</u>, 482 U.S. 137, 140-42 (1987); *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

"The finding of the Secretary[4/] as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. §  405(g).  Substantial evidence is that amount and type of evidence that a reasonable mind will accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Williams*, 844 F.2d at 750.  In terms of traditional burdens of proof, substantial evidence is more than a scintilla, but less than a preponderance.  *Perales*, 402 U.S. at 401.  Evidence is not substantial if it is overwhelmed by other evidence in the record.  *Williams*, 844 F.2d at 750.

This Court must also determine whether the Commissioner applied the correct legal standards.  *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994).  The Commissioner's decision will be reversed when he uses the wrong legal standard or fails to clearly demonstrate reliance on the correct legal standards.  *Glass*, 43 F.3d at 1395.

## III.  ADMINISTRATIVE LAW JUDGE'S DECISION

The ALJ found that Plaintiff was able to perform light and sedentary work.  [R. at 19]. The ALJ concluded, at Step Four, that Plaintiff could not return to his past relevant work was at the heavy exertional level.  [R. at 19].  Based on the testimony of the vocational expert, the ALJ concluded that work existed in the national economy which Plaintiff could perform.  [R. at 19].  The ALJ determined that Plaintiff was not disabled.

## IV.  REVIEW

Plaintiff has alleged only one issue as error – the ALJ's credibility determination. Plaintiff notes the importance of Plaintiff's credibility in this case, asserting that the

---

[4/]   Effective March 31, 1995, the functions of the Secretary of Health and Human Services ("Secretary") in social security cases were transferred to the Commissioner of Social Security. P.L. No. 103-296. For the purpose of this Order, references in case law to "the Secretary" are interchangeable with "the Commissioner."

vocational expert testified that if Plaintiff was fully credible no work in the national economy existed which Plaintiff could perform.

The ALJ in this case concluded that Plaintiff could perform light and sedentary work. Plaintiff's attorney also gave a modified hypothetical question to the vocational expert.  In the hypothetical, Plaintiff indicated an individual who was unable to lift or carry 15 pounds, had no fine vision, could carry up to five pounds frequently, had no significant stooping or bending, crawling, crouching and kneeling only occasionally, a sit and stand option for every 30 to 45 minutes, and standing only for five to ten minutes at a time, walking limited to two hours in an eight hour day.  For such an individual, the vocational expert listed some sedentary jobs which that person could perform.

Credibility determinations are a determination left to the finder of fact, and the ALJ's finding is afforded deference as a result.

> The ALJ enjoys an institutional advantage in making the type of determination at issue here.  Not only does an ALJ see far more social security cases than do appellate judges, he or she is uniquely able to observe the demeanor and gauge the physical abilities of the claimant in a direct and unmediated fashion.  As a result, the ALJ's credibility findings warrant particular deference.

*White v. Barnhart*, 287 F.3d 903, 910 (10th Cir. 2002).  *See also McGoffin v. Barnhart*, 288 F.2d 1248, 1254 (10th Cir. 2002); *Hamilton v. Secretary of Health & Human Services*, 961 F.2d 1495 (10th Cir. 1992).  On appeal, the court's role is to verify whether substantial evidence in the record supports the ALJ's decision, and not to substitute the court's judgment for that of the ALJ.  *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) ("Credibility determinations are peculiarly within the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence.").

Plaintiff notes that the ALJ discussed Plaintiff's testimony at the hearing and Plaintiff's medical record.   The ALJ's discussion of Plaintiff's credibility includes the following:

> The claimant's credibility is diminished based on the following reasons: When he completed the Disability Supplemental Interview Outline on June 2, 2003, he showed he does housework, some of the yard work, that he cares for two little girls after school and in the summer time while their mother works.  He even said he did this for income.  He also is able to visit with friends and relatives, takes care of his own personal needs, works on cars sometimes, does volunteer work with the Cherokee Nation kids, helping with softball, fishing, and said he plays Santa at Christmas.   The claimant has alleged depression, but he has had no counseling or treatment for depression, other than taking Zoloft for a while.  The claimant has also alleged glaucoma, however, his vision is satisfactory.

[R. at 18].  Plaintiff asserts the ALJ erred because the ability to do household chores and personal grooming tasks does not indicate an ability to work.  Plaintiff asserts that "the ability to mow the lawn does not mean an individual can spend much of the day standing and walking."  [Docket No. 15 at 3].

In assessing Plaintiff's credibility, however, an ALJ is certainly permitted to review the record for inconsistencies.  An inconsistency reflects upon the Plaintiff's credibility.  In this case, the ALJ noted numerous inconsistencies in Plaintiff's statements and forms which the ALJ indicated impacted Plaintiff's credibility and testimony.  The ALJ did not reference the inconsistencies as proof that Plaintiff could perform all of the activities necessary for daily work.  Specifically, the ALJ summarized Plaintiff's testimony noting that Plaintiff indicated he has constant pain, even with medication, is unable to move in certain ways, bend over or pick things up without pain, is unable to stand ten to fifteen minutes or sit more than thirty minutes, and must walk slowly.  [R. at 17].  The ALJ then contrasted

Plaintiff's testimony with the Disability Supplemental Interview Outline which Plaintiff completed in which Plaintiff noted that he drinks coffee and watches the news, straightens the house, washes the dishes, does some yard work, cares for two little girls to bring in income, visits with relatives, works on cars and collects art, is an active volunteer with softball, fishing, and playing Santa Claus.  Certainly Plaintiff's testimony contrasts with the reports Plaintiff submitted to the Social Security Administration.  The ALJ is permitted to rely upon contradictions in the record as reflective of Plaintiff's credibility.  An ALJ is, however, permitted to refer to the performance of daily activities as contradicting Plaintiff's previous assertions, and as reflecting upon Plaintiff's credibility.  *See, e.g., Bean v. Chater*, 77 F.3d 1210 (10th Cir. 1995) (consideration of Plaintiff's reported inconsistencies in her report of daily activities appropriate for consideration by ALJ); *Gosset v. Bowen*, 862 F.2d 802, 807 (10th Cir. 1988) (consideration of daily activities appropriate in disability application).

Plaintiff suggests that the ALJ's reference to Plaintiff's depression when he was not receiving treatment for it and to Plaintiff's assertion of glaucoma when Plaintiff had no restrictions related to glaucoma do not reflect upon Plaintiff's credibility.  Plaintiff did list "beginning stages of glaucoma" as one reason for his disability when completing his disability reports.  [R. at 76].  The ALJ notes that Plaintiff alleges glaucoma, "however, his vision is satisfactory."  Similarly, the ALJ notes Plaintiff "has alleged depression, but he has had no counseling or treatment for depression. . . ."  One interpretation of the ALJ's references to glaucoma is that although Plaintiff listed glaucoma as a disabling impairment, Plaintiff's medical records indicated that Plaintiff had no current disabling impairment from glaucoma.  However, the ALJ does not sufficiently develop the reference to glaucoma or

depression to enable the Court to review these references as credibility factors.  Plaintiff urges this as reversible error.  However, as presented, the Court cannot conclude that the mention of glaucoma and depression merits reversal of the ALJ's decision based upon the evaluation by the ALJ of Plaintiff's credibility.

In reaching his decision, the ALJ also summarized and evaluated Plaintiff's medical record.  The ALJ noted Plaintiff's prior surgeries, doctor visits, and emergency room treatment.  The ALJ noted the consultative examinations by Dr. Kurella (August 28, 2003) and Dr. Sutton (December 3, 2004).  The ALJ noted that Plaintiff stated that his doctors told him not to lift over 15 pounds.

The medical record contains nothing from Plaintiff's doctors expressly contradicting the findings of the ALJ as to Plaintiff's RFC.  The record contains the opinions of two examining physicians supporting the findings of the ALJ with regard to Plaintiff's RFC.  The primary evidence contradicting the findings of the ALJ and supporting Plaintiff's position is the testimony of Plaintiff which the ALJ found contradicted Plaintiff's prior representations in paperwork submitted to the Social Security Administration.

Plaintiff suggests that the ALJ ignored the testimony of Plaintiff's wife at the hearing. However, Plaintiff's wife primarily testified about Plaintiff's medical history, which was in the record, and her belief that Plaintiff accurately testified about his limitations with the exception that he leaves the house less frequently than he reported.

The Court has reviewed the record and the decision of the ALJ.  The Court concludes that the ALJ's decision is supported by substantial evidence.

Dated this 29th day of September 2006.

Sam A. Joyner
United States Magistrate Judge